1

GERALD WOLFE (SBN 180599)
6B LIBERTY, SUITE 210
ALISO VIEJO, CALIFORNIA 92656
TELEPHONE (949)257-0961
FACSIMILE (949)878-4840

2

3

ATTORNEY FOR DEBTORS
DON K. AND DORIS M. SAINZ

4

5

6

7

UNITED STATES BANKRUPTCY COURT

8

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

9

10

IN RE:

11

DON K. SAINZ and
DORIS M. SAINZ

12

13

          Debtors,

14

15

16

17

18

19

| | |
|---|---|
| CASE NO. 8:09-BK-20502-ES | |

CHAPTER: 13
JUDGE:  Erithe A. Smith

NOTICE OF MOTION AND DEBTORS'
MOTION TO AVOID LIEN OF SECOND
DEED OF TRUST HOLDER, CITIBANK
UNDER 11 U.S.C. § 506(a) AND/OR
STATUTORY LIEN OF ORANGE COUNTY
TREASURER-TAX COLLECTOR UNDER
11 U.S.C. § 1322(b)(2); MEMORANDUM OF
POINTS AND  AUTHORITIES,
DECLARATIONS IN SUPPORT THEREOF;
[PROPOSED] ORDER

DATE: January 7, 2010
TIME: 10:30 A.M.
COURTROOM: 5A

20

21

**TO: THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY**

22

**COURT, CHAPTER 13 TRUSTEE, CITIBANK, ORANGE COUNTY TREASURER-**

23

**TAX COLLECTOR and all other interested parties:**

24

25

**NOTICE IS HEREBY GIVEN** that on January 7, 2010 at 10:30 A.M. in Courtroom  5A, of the

26

U.S. Bankruptcy Court located at 411 West Fourth Street, Santa Ana, CA 92701-4593 debtors

27

Don K. Sainz and Doris M. Sainz will move this court for an order avoiding the lien of the

28

DEBTORS' MOTION TO AVOID LIEN - 1

1  second trust deed holder CITIBANK and the statutory lien of ORANGE COUNTY

2  TREASURER –TAX COLLECTOR from debtors' real property located at 124 Royal Place,

3  Anaheim, CA 92806 (with the legal description N TR 6752 LOT 34 and Asessor's Parcel

4  Number of APN 268-111-26) under 11 U.S.C. §506(a) on the basis that said lien is wholly

5  unsecured.

6      This motion is based upon this notice, the attached memorandum of points and

7  authorities, and Declaration of Debtor Don K. Sainz, Declaration of Real Estate Appraiser,

8  Glenn Halperin, and the Declaration of Gerald Wolfe as well as the records and files in this

9  action, and such other evidence as may be presented at the hearing on this matter.

10     *Pursuant to Local Bankruptcy Rule 9013-1(7) any opposition to this Motion must be*

11 *filed and served on debtors and debtors' counsel no less than fourteen (14) days prior to the*

12 *above hearing date. Failure to file and serve a timely response to this Motion may result in a*

13 *waiver of your right to oppose the Motion and the court may grant the requested relief without*

14 *further notice to you.*

15     The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §157 and 1334.  The

16 debtors have standing to bring this Motion.

17

18

19  DATE:  November 23, 2009

20

21              _____/s/ Gerald Wolfe_____
                GERALD WOLFE
22              Attorney for Debtors Mark and Lydia Chavarria

23

24

25

26

27

28

# I. STATEMENT OF FACTS

1

2      Debtors filed the instant bankruptcy case on September 30, 2009.  Debtors are (or in the

3  least Don K. Sainz is) fee simple owners of their principal residence located at 124 Royal Place,

4  Anaheim, CA 92806. ("Property").  (See Schedule A filed in the instant case as Exhibit "1"

5  attached hereto and incorporated by reference.)

6      The fair market value of the property is $325,000 based on the following:

7  •   Appraisal by State Certified Real Estate Appraiser, Glen Halperin, with Appraiser

8      number AR033954 (See declaration and appraisal attached as Exhibit "2"; Exhibit "2" is

9      incorporated herein by reference.)

10

11      There are two deed of trusts attached to the aforementioned property at issue.  The First Deed

12  of Trust is currently held by IndyMac in the amount of approximately $412,750.  (See Amended

13  Schedule D attached hereto as Exhibit "3" and Proof of Claim filed by ONEWEST BANK, FSB

14  on behalf of "DEUSTCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE OF THE

15  INDYMAC INDX MORTGAGE LOAN TRUST 2006-AR23, MORTGAGE PASS-THROUGH

16  CERTIC***" in the amount of $436, 500.05 attached as Exhibit "4"; both exhibits are

17  incorporated herein by reference.)  The Second Deed of Trust is held by CITIBANK in  the

18  approximate amount of $110,272.83. (See Amended Schedule D attached hereto as Exhibit "3"

19  and loan related documents and last statement received attached as Exhibit "5" and "6"

20  respectively;   both exhibits are incorporated herein by reference.)

21      The ORANGE COUNTY TREASURER-TAX COLLECTOR has a statutory lien on the

22  Property for property taxes unpaid for the fiscal period of 2008-2009.  California Revenue & Tax

23  Code Section 2187 provides for this lien. ("Every tax, penalty, or interest, including redemption

24  penalty or interest, on real property is a lien against the property assessed")  A true and correct

25  copy of the claim in the amount of $1002.60 filed by ORANGE COUNTY TREASURER-TAX

26  COLLECTOR is attached as Exhibit "7".  (See also Amended Schedule D attached as Exhibit

27  "3")

28

## II. ARGUMENT

**A.   A SECURED CLAIM IS SECURED ONLY TO THE EXTENT OF THE VALUE OF THE COLLATERAL AND UNALLOWED SECURED CLAIMS ARE VOID**

11 U.S.C Section 506(a) states that:

An allowed claim of a creditor secured by a lien on property in which the Estate has an interest, or that is subject to a setoff under section 553 of this Title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff ,as the case may be. and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. Section 506(d) states that:

To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void. (emphasis added)

**B.   THE DEBTORS MAY REQUEST AND THE COURT MAY ENTER AN ORDER THAT VALUES COLLATERAL WHICH IS PROPERTY OF THE BANKRUPTCY ESTATE AND WHICH SECURES A CLAIM OF A CREDITOR AGAINST THE DEBTOR.**

Bankruptcy Rule 3012 states that the court may determine the value of a claim secured by a lien on property to which the estate has an interest on motion of any party and after a noticed hearing,

**C.   THE LIEN OF THE SECOND DEED TRUSTHOLDER, CITIBANK, SHOULD BE AVOIDED AND REMOVED SINCE THE PROPERTY IS WORTH $325,000, WHICH IS LESS THAN THE PRINCIPAL BALANCE OF $412,750 ON AMENDED SCHEDULE D AND THE AMOUNT OF $436, 500.05 AS PER INDYMAC'S CLAIM ON THE FIRST DEED OF TRUST.**

The prevailing case law in this jurisdiction holds that Chapter 13 debtors are entitled to "strip off" totally unsecured junior mortgages on a principal residence where the claims of the

junior lienholders are unsecured given that the value of the principal residence is less than the balance owed on the first mortgage. See, *In re Lam*. 211 B.R.36 (9th Cir. BAP. 1997). In *Lam* the court held a Debtor's completely unsecured junior mortgage could be stripped from his principal residence:

> The *Nobleman* decision holding that section 1322(b)(2) bars a chapter 13 plan from modifying the rights of holders of claims, secured only by the debtor's principal residence, does not apply to holders of totally unsecured claims. The extension of the protections of section 1322(b) to wholly unsecured lienholders is contrary to the provisions of the bankruptcy code allowing dischargeability of unsecured claims.

*In re Lam* followed the earlier decision of *In re Geyer* 203 B.R. 726 (S.D. Cal 1996) In *Geyer* the court sustained the Debtor's motion to avoid a lien brought under Bankruptcy Code Section 506(d), and held that a chapter 13 debtor may strip off a lien on his or her primary residence when the lienholder's interest is totally unsecured.

> ... the term 'secured claim' as used in section 1322(b)(2) has the same meaning as the term 'secured claim' in section 506(a). Unless there is some equity to which the creditor's lien attaches, there is no allowed secured claim and no entitlement to the protections against modification contained in section 1322 (b)(2). A chapter 13 debtor may 'strip-off' a lien on his or her primary residence under the plan or under section 506(d) when the lienholder's interest is totally unsecured. See, *In re Geyer*, 203 B.R. 726, 729 (S.D. Cal. 1996)

The Ninth Circuit allows this result when there is no equity to which the lien of the junior mortgage will attach. See, *In re Zimmer*, 313 F.3d 1229 (C.A.9 (Cal.) 2002). Thus if there is no equity to which a junior lien attaches, that debt becomes an unsecured claim and can be removed as a lien on the property on entry of the chapter 13 discharge.

In the instant case the Property to be retained in the Chapter 13 plan is debtors' principal residence. The value of the property is $325,000, and the principal balance of the First Deed of Trust is at least $412,750 as listed on the Amended Schedule D and $436, 500.05 as per the claim filed on behalf of INDYMAC. Thus, the secured interest of the Second Deed of Trust is not only undersecured but wholly unsecured since there is absolutely no equity to which the

1   Second Deed of Trust can attach.  Therefore, Second Deed of Trust like that found *In re Lam*

2   should be extinguished, treated as unsecured for purposes of the instant chapter 13 proceeding

3   and discharged at the completion of the plan terms.

4   **D.    THE STATUTORY LIEN OF ORANGE COUNTY TREASURER-TAX**

5   **COLLECTOR SHOULD BE AVOIDED AND REMOVED AS IT IS NOT SECURED BY**

6   **A SECURITY INTEREST**

7          11 U.S.C. Section 1322(b)(2) allows for the modification of the  "the rights of holders of

8   *secured claims, other than a claim secured only by a security interest in real property that is the*

9   *debtor's principal residence.*"  (Emphases added).  Since the lien is attached to the debtors'

10  principal residence, the analysis turns on whether or not it is secured by a security interest.

11  "The Bankruptcy Code defines 'security interest' as 'a lien created by an *agreement.*' 11 U.S.C

12  Section 101(51)(emphasis added).  In contrast, the Code provides that the term 'statutory lien'

13  means a 'lien arising *solely by force of a statute* on specified circumstances or conditions ... but

14  *does not include security interest* or judicial lien.' 11 U.S.C. Section 101 (53)  (emphases

15  added)."  *Rankin v. Desarno* 89 F.3d 1123, 1127 (3rd Cir., 1996)  The *Rankin* Court went on to

16  hold that "(b)ecause .... tax liens arose under state statute, and not from a consensual or

17  voluntary agreement with the taxpayer defendants, we concur in the bankruptcy court's ruling

18  that those liens are not "security interests" for purposes of § 1322(b)(2)." *Id.*  The Court further

19  delineated a litany of cases in support of its holding including but not limited to *In re Mitchell* 39

20  B.R. 696, 700 (Bankr.D.Or.1984).

21         In this case, as in *Rankin*, the debtors did not consent to the lien;  the lien, as attested to in

22  the claim itself, was a product of statute.  As such, the statutory lien of ORANGE COUNTY

23  TREASURER-TAX COLLECTOR should be avoided and removed.

24                              **III. CONCLUSION**

25         The second Deed of Trust held by CITIBANK  is wholly unsecured. The statutory lien of

26  ORANGE COUNTY TREASURER-TAX COLLECTOR is not secured by a security interest.

27  Based on the foregoing, the debtor respectfully requests the following:

28

1.      That the Second Deed of Trust held by CITIBANK be deemed an unsecured claim during the pendency of the debtor's Chapter 13 plan, and the Chapter 13 Trustee treat such claim as an unsecured claim;

2.      That upon completion of all plan payments and entry of discharge in this case pursuant to 11 U.S.C. Section 1328, the second Deed of Trust of CITIBANK or its successors, assigns or other beneficial interest holder will be void and will not constitute an encumbrance on the Property;

3.      That upon completion of all plan payments and upon entry of discharge in this case, CITIBANK, or its successors, assigns or other beneficial interest holder is ordered to immediately reconvey the second Deed of Trust and otherwise take such steps as are required to clear title, free of said lien, as to the Property;

4.      That the lien of CITIBANK shall remain valid only if the case is either dismissed or converted to another chapter prior to the completion of the plan and entry of a chapter 13 discharge;

5.      That the claim filed by ORANGE COUNTY TREASURER-TAX COLLECTOR for property taxes on the Property be deemed an unsecured priority claim during the pendency of the debtor's Chapter 13 plan, and the Chapter 13 Trustee treat such claim as an unsecured priority claim;

6.      That upon completion of all plan payments and entry of discharge in this case pursuant to 11 U.S.C. S. 1328, ORANGE COUNTY TREASURER-TAX COLLECTOR, or its successors, assigns or other beneficial interest holder is ordered to take such steps as are required to clear title, free of said lien, as to the Property only if the lien is still otherwise valid under state law or local law; and

7.      That the lien of ORANGE COUNTY TREASURER-TAX COLLECTOR shall remain valid if the case is either dismissed or converted to another chapter prior to the completion of the plan and entry of a chapter 13 discharge only if the lien is still otherwise valid under state or local law.

DEBTORS' MOTION TO AVOID LIEN - 7

DATE:  November 23, 2009

_____/s/ Gerald Wolfe_____
GERALD WOLFE
Attorney for Debtors Don K. and Doris Sainz

**DECLARATION OF GLENN HALPERIN IN SUPPORT OF MOTION TO AVOID LIEN**

I, GLENN HALPERIN, declare as follows:

1. I know the facts set forth in this declaration to be true from my personal knowledge, except as to those facts stated upon information and belief, and as to those facts, I believe them to be true. If called upon to testify, I could and would competently testify to the facts set forth in this declaration;

2. I am licensed by the State of California to perform real estate appraisals; my license number is AR033954. I have been performing real estate appraisals for over 15 years to and I appraise approximately 40 a month;

3. In late October 2009, I was retained by Don Sainz to perform an appraisal on the single family residence located at 124 Royal Place, Anaheim, CA 92806 ("Property"). Sometime shortly thereafter, I examined the Property and conducted an appraisal. Attached hereto as Exhibit "2" is a true and correct copy of the appraisal of the Property and by this reference made a part hereof;

4. In determining the fair market value of the Property, I used the sales comparison approach. In preparing the appraisal report, I performed market research, inspected the Property, both interior and exterior, measure the Property to determine square footage, and surveyed the immediate neighborhood;

5. Based upon my observations, inspection of the Property, and market research, as well as my training, education, and experience as a residential real estate appraiser, it is my professional opinion that the Property has a market value of $325,000 as of November 3, 2009;

6. I have no present nor contemplated future interest in the Property. Neither my employment nor compensation for this appraisal is contingent upon the value found;

7. I have no personal interest or bias with respect to the subject matter of the appraisal or the parties involved.

1

2   I declare under penalty of perjury under the laws of the State of California that the foregoing is

3   true and correct.

4

5   Executed this 23th day of November, 2009 at Costa Mesa,  California

6

7

8   GLENN HALPERIN, declarant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "2"

GLENN HALPERIN APPRAISALS

# APPRAISAL OF



**A SINGLE FAMILY RESIDENCE**

**LOCATION** : 124 S ROYAL PL
ANAHEIM          CA          92806

**CLIENT** : GEROLD WOLFE, ESQ.

**AS OF DATE** : 11/03/2009

**APPRAISER** : Glenn A Halperin

GLENN HALPERIN APPRAISALS
372 Ramona Way

| | |
|---|---|
| FILE # | 769-E4-1 |
| Invoice #: | DS110309 |
| Date Invoiced | 11/03/2009 |
| Terms: | COD |
| Date Due: | 11/03/2009 |
| | PAID IN FULL |

To:  GEROLD WOLFE, ESQ.

Borrower: SAINZ

For Property located at

124 S ROYAL PL
ANAHEIM          CA          92806

Fee: $                    350

---

Remittance Copy

Please remit payment to:  GLENN HALPERIN APPRAISALS
                          372 Ramona Way

Invoice #:    DS110309

File #:       769-E4-1

Total Amount Due:          $ -0-

Amount Remitted (if different)  $

GLENN HALPERIN APPRAISALS

# FannieMae

DS110309
File # 769-E4-1

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

## SUBJECT

| | | |
|---|---|---|
| Property Address 124 S ROYAL PL | City ANAHEIM | State CA  Zip Code 92806 |
| Borrower SAINZ | Owner of Public Record SAME | County ORANGE |
| Legal Description N TR 6752 LOT 34 | | |
| Assessor's Parcel # 268-111-26 | Tax Year 2008 | R.E. Taxes $ 1,003 |
| Neighborhood Name LINCOLN & RIO VISTA | Map Reference 769-E4 | Census Tract 864.06 |
| Occupant  X Owner  Tenant  Vacant  Special Assessments $ | | PUD  HOA $  per year  per month |
| Property Rights Appraised  X Fee Simple  Leasehold  Other (describe) | | |
| Assignment Type  Purchase Transaction  Refinance Transaction  X Other (describe) ESTATE VALUATION | | |
| Lender/Client GEROLD WOLFE, ESQ. | Address | |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?   Yes  X No
Report data source(s) used, offering price(s), and date(s).

## CONTRACT

I  did  did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.  N/A

| | | |
|---|---|---|
| Contract Price $ | Date of Contract | Is the property seller the owner of public record?  Yes  No  Data Source(s) |

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?   Yes  No
If Yes, report the total dollar amount and describe the items to be paid.

## NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|
| Location  Urban  X Suburban  Rural | Property Values  Increasing  X Stable  Declining | | PRICE $(000) | AGE (yrs) | One-Unit 75 % | |
| Built-Up  X Over 75%  25-75%  Under 25% | Demand/Supply  Shortage  X In Balance  Over Supply | | 250 Low | NEW | 2-4 Unit 10 % | |
| Growth  Rapid  X Stable  Slow | Marketing Time  Under 3 mths  X 3-6 mths  Over 6 mths | | 400 High | 95 | Multi-Family 5 % | |
| | | | 325 Pred. | 50 | Commercial 5 % | |
| | | | | | Other 5 % | |

Neighborhood Boundaries  THE SUBJECT IS BOUND BY 91 FREEWAY TO THE NORTH, SANTA ANA RIVER TO THE EAST, LINCOLN AVE TO THE SOUTH AND 57 FREEWAY TO THE WEST.

Neighborhood Description  SEE ADDENDUM

Market Conditions (including support for the above conclusions)  SEE ADDENDUM

## SITE

| | | |
|---|---|---|
| Dimensions Slightly irregular shaped lot | Area 7650 SF | Shape Slightly irregular  View NONE |
| Specific Zoning Classification R1 | Zoning Description SINGLE FAMILY RESIDENTIAL | |
| Zoning Compliance  X Legal  Legal Nonconforming (Grandfathered Use)  No Zoning  Illegal (describe) | | |

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use?   X Yes  No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | X | | Water | X | | Street ASPHALT | X | |
| Gas | X | | Sanitary Sewer | X | | Alley NONE | | |

FEMA Special Flood Hazard Area  Yes  X No  FEMA Flood Zone X500  FEMA Map # 0602130132H  FEMA Map Date 02/18/2004
Are the utilities and off-site improvements typical for the market area?   X Yes  No If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?   Yes  X No. If Yes, describe

## IMPROVEMENTS

| GENERAL DESCRIPTION | FOUNDATION | EXTERIOR DESCRIPTION materials/condition | INTERIOR materials/condition |
|---|---|---|---|
| Units  X One  One with Accessory Unit | X Concrete Slab  Crawl Space | Foundation Walls CONCRETE/AVG | Floors CARPET, VINYL/AVG |
| # of Stories One | Full Basement  Partial Basement | Exterior Walls STUCCO/AVG | Walls DRYWALL/AVG |
| Type  X Det.  Att.  S-Det/End Unit | Basement Area sq. ft. | Roof Surface comp/AVG | Trim/Finish WOOD/AVG |
| X Existing  Proposed  Under Const. | Basement Finish % | Gutters & Downspouts YES/AVG | Bath Floor TILE/AVG |
| Design (Style) CONVENTIONAL | Outside Entry/Exit  Sump Pump | Window Type ALUM SLIDER/AVG | Bath Wainscot tile/AVG |
| Year Built 1970 | Evidence of  Infestation | Storm Sash/Insulated N/A | Car Storage  None |
| Effective Age (Yrs) 25 | Dampness  Settlement | Screens NYLON/AVG | X Driveway  # of Cars 2 |

| Attic  None | Heating  X FWA  HWBB  Radiant | Amenities | Wood/Stove(s) # | Driveway Surface |
|---|---|---|---|---|
| Drop Stair  Stairs | Other  Fuel GAS | X Fireplace(s) # 1 | X Fence | X Garage  No. of Cars 2 |
| Floor  X Scuttle | Cooling  X Central Air Conditioning | X Patio/Deck | X Porch | Carport  No. of Cars |
| X Finished  Heated | Individual  Other | X Pool | Other | X Att.  Det.  Built-in |

| Appliances  Refrigerator  X Range/Oven  X Dishwasher  X Disposal  X Microwave  Washer/Dryer  Other (describe) |
|---|

Finished area above grade contains: 6 Rooms  3 Bedrooms  2 Bath(s)  1,449 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.):  SEE ADDENDUM

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  SEE ADDENDUM

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?   Yes  X No. If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?   X Yes  No. If No, describe

DS110309

## Uniform Residential Appraisal Report

File # 769-E4-1

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| There are | 14 comparable properties currently offered for sale in the subject neighborhood ranging in price from $ | | | 250,000 to $ | | 375,000 | |
| There are | 12 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ | | | 265,000 to $ | | 365,000 | |
| Address | 124 S ROYAL PL ANAHEIM | 2821 E DUTCH AVE ANAHEIM | | 223 S ALICE WAY ANAHEIM | | 2703 E MARDI GRAS AVE ANAHEIM | |
| Proximity to Subject | | 0.10 MI N | | 0.30 MI SE | | 0.25 MI N | |
| Sale Price | $ | | 340,000 | $ | 330,000 | $ | 350,500 |
| Sale Price/Gross Liv. Area | $ sq. ft. | $ 201.06 sq. ft. | | $ 207.03 sq. ft. | | $ 238.27 sq. ft. | |
| Data Source(s) | NDC | NDC, MLS# L30063 | | NDC, MLS# F1803974 | | NDC, MLS# MRM-I09042079 | |
| Verification Source(s) | INSPECTION, NDC | LP$299,000 | | LP$339,000 | | LP$350,000 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | DOM 4 | | DOM 1 | | DOM 48 | |
| Concessions | | CONV | | CONV | | CONV | |
| Date of Sale/Time | | 09/14/2009 | | 07/16/2009 | | 06/23/2009 | |
| Location | RESIDENTIAL | RESIDENTIAL | | RESIDENTIAL | | RESIDENTIAL | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 7650 SF | 5,207 SF | = | 5,100 SF | = | 8,383 SF | = |
| View | NONE | NONE | | NONE | | NONE | |
| Design (Style) | CONVENTIONAL | CONV | | CONV | | CONV | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Actual Age | 36 / 25 EFF | 38 / 25 EFF | | 40 / 25 EFF | | 47 / 20 EFF | |
| Condition | AVERAGE | AVERAGE | | AVERAGE | | GOOD | -25,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | -3,000 | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 6   3   2 | 8   4   3 | -3,000 | 6   3   2 | | 6   3   1 | 3,000 |
| Gross Living Area | 1,449 sq. ft. | 1,691 sq. ft. | -12,000 | 1,594 sq. ft. | -7,000 | 1,471 sq. ft. | 0 |
| Basement & Finished | NONE NOTED | NONE NOTED | | NONE NOTED | | NONE NOTED | |
| Rooms Below Grade | DOC # | DOC #489384 | | DOC #379609 | | DOC #329775 | |
| Functional Utility | GOOD | GOOD | | GOOD | | GOOD | |
| Heating/Cooling | FWA/CAC | FWA/CAC | | FWA/CAC | | FWA/CAC | |
| Energy Efficient Items | NONE NOTED | NONE NOTED | | NONE NOTED | | NONE NOTED | |
| Garage/Carport | 2 CAR ATT | 2 CAR ATT | | 2 CAR ATT | | 2 CAR ATT | |
| Porch/Patio/Deck | PATIO | PATIO | | PATIO | | PATIO | |
| APN | | 268-013-06 | | 268-031-13 | | 268-282-08 | |
| | POOL | NO POOL | = | NO POOL | = | NO POOL | = |
| | | PROBATE | | SHORT SALE | | SHORT SALE | |
| Net Adjustment (Total) | | □ + ☒ - | -18,000 | □ + ☒ - | -7,000 | □ + ☒ - | -22,000 |
| Adjusted Sale Price | | Net Adj. -5.29 % | | Net Adj. -2.12 % | | Net Adj. -6.28 % | |
| of Comparables | | Gross Adj. 5.29 % $ 322,000 | | Gross Adj. 2.12 % $ 323,000 | | Gross Adj. 7.99 % $ 328,500 | |

☒ I did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s) NDC, MLS
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s) NDC, MLS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 09/12/1973 | NOT LISTED | NOT LISTED | 06/08/2006 |
| Price of Prior Sale/Transfer | 39,000 | NOT LISTED | NOT LISTED | 598,000 |
| Data Source(s) | NDC, MLS | NDC, MLS | NDC, MLS | NDC, MLS |
| Effective Date of Data Source(s) | 11/03/2009 | 11/03/2009 | 11/03/2009 | 11/03/2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales     THE SUBJECT HAS NOT TRANSFERED WITHIN THE LAST 3 YEARS.

Summary of Sales Comparison Approach     The Sales Comparison Analysis best reflects buyer / seller reaction within the subject market and thus given primary emphasis. The Income Approach was not utilized due to the lack of rentals in the direct market area. The Cost Approach supports the value, although minimal weight was placed on the Cost Approach as land sales are limited in this market area.

Indicated Value by Sales Comparison Approach $     325,000

Indicated Value by: Sales Comparison Approach $ 325,000 Cost Approach (if developed) $ 321,100 Income Approach (if developed) $

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 325,000 as of 11/03/2009 , which is the date of inspection and the effective date of this appraisal.

DS110309

## Uniform Residential Appraisal Report

File #    769-E4-1

SEE ADDENDUM

**ADDITIONAL COMMENTS**

---

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate your cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    **SEE ADDENDUM**

| ESTIMATED | REPRODUCTION OR | X REPLACEMENT COST NEW | OPINION OF SITE VALUE | = $ | 225,000 |
|---|---|---|---|---|---|
| Source of cost data  **MARSHALL & SWIFT** | | | Dwelling    1,448.50 Sq. Ft. @    95 | = $ | 137,607.50 |
| Quality rating from cost service   AVG/GD   Effective date of cost data   11/09 | | | Sq. Ft. @ | = $ | |

Comments on Cost Approach (gross living area calculations, depreciation, etc.)
The land value is estimated by abstraction. The land to improvement
ratio is typical for the area. The cost approach figures are derived from
the Marshall and Swift cost handbook.  The calculated GLA is an
approximation. The estimated remaining economic life of the property is
based on 75 years.  The subjects site value is above the guidelines 30%
of the total value which is typical to the area. No adverse effect on
marketability.

**EXTRAS INCLUDED ABOVE**

| | | | |
|---|---|---|---|
| Garage/Carport    480 Sq. Ft. @    45 | = $ | 21,600 | |
| Total Estimate of Cost-New | = $ | 159,207.50 | |
| Less | Physical | Functional | External |
| Depreciation    53,069.11 | | 25,000 = $ | 78,069.11 |
| Depreciated Cost of Improvements | = $ | 81,138.39 | |
| "As Is" Value of Site Improvements | = $ | 15,000 | |

Estimated Remaining Economic Life (HUD and VA only)    50    Years  **INDICATED VALUE BY COST APPROACH** = $    321,100

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $ N/A    X Gross Rent Multiplier    = $    Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?    Yes    No    Unit type(s)    Detached    Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data Source(s) |

Was the project created by the conversion of existing building(s) into a PUD?    Yes    No    If Yes, date of conversion

Does the project contain any multi-dwelling units?    Yes    No    Data Source(s)

Are the units, common elements, and recreation facilities complete?    Yes    No    If No, describe status of completion.

Are the common elements leased to or by the Homeowners' Association?    Yes    No    If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

---

Freddie Mac Form 70 March 2005    Page 3 of 6    Fannie Mae Form 1004 March 2005

Uniform Residential Appraisal Report

DS110309
File #    769-E4-1

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:**    The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:**    The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.
**INTENDED USER:**    The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:**    The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.
*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:**    The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

DS110309

Uniform Residential Appraisal Report                    File #    769-E4-1

---

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject. property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

DS110309

Uniform Residential Appraisal Report

File # 769-E4-1

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.
2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.
3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.
4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.
5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Glenn A Halperin | Name |
| Company Name  Glenn Halperin Appraisals | Company Name |
| Company Address  372 Ramona Way | Company Address |
| Costa Mesa          CA          92627 | |
| Telephone Number  949-295-1873 | Telephone Number |
| Email Address  glenn@halperinappraisals.com | Email Address |
| Date of Signature and Report  11/03/2009 | Date of Signature |
| Effective Date of Appraisal  11/03/2009 | State Certification # |
| State Certification #  AR033954 | or State License # |
| or State License # | State |
| or Other (describe)          State # | Expiration Date of Certification or License |
| State  CA | ☐ Did not inspect subject property |
| Expiration Date of Certification or License  05/06/2010 | SUBJECT PROPERTY |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 124 S ROYAL PL | Date of Inspection |
| ANAHEIM          CA          92806 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $          325,000 | Date of Inspection |
| LENDER/CLIENT | COMPARABLE SALES |
| Name | ☐ Did not inspect exterior of comparable sales from street |
| Company Name  GEROLD WOLFE, ESQ. | ☐ Did inspect exterior of comparable sales from street |
| Company Address | Date of Inspection |
| Email Address | |

**SUPPLEMENTAL SALES 4,5,6 ADDENDUM**

DS110309

File #   769-E4-1

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 124 S ROYAL PL ANAHEIM | 518 N CHANTILLY ST ANAHEIM | | 217 N CHANTILLY ST ANAHEIM | | | |
| Proximity to Subject | | 0.45 MI NW | | 0.20 MI W | | | |
| Sale Price | $ | | $ 369,900 | $ 385,000 | | $ | |
| Sale Price/Gross Liv. Area | $ sq. ft. | $ 235.46 sq. ft. | | $ 236.49 sq. ft. | | $ sq. ft. | |
| Data Source(s) | NDC | NDC, MLS# L31058 | | NDC, MLS# U9004453 | | | |
| Verification Source(s) | INSPECTION, NDC | LP$369,900 | | LP$385,000 | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | DOM 35 | | DOM 20 | | | |
| Concessions | | LISTING (-10%) | -37,000 | PENDING (-10%) | -39,000 | | |
| Date of Sale/Time | | 09/29/2009 | | 10/28/2009 | | | |
| Location | RESIDENTIAL | RESIDENTIAL | | RESIDENTIAL | | | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | | |
| Site | 7650 SF | 7,778 SF | | 7,200 SF | | | |
| View | NONE | NONE | | NONE | | | |
| Design (Style) | CONVENTIONAL | CONV | | CONV | | | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | | |
| Actual Age | 36 / 25 EFF | 47 / 25 EFF | | 47 / 25 EFF | | | |
| Condition | AVERAGE | AVERAGE | | AVERAGE | | | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | -3,000 | Total Bdrms Baths | -3,000 | Total Bdrms Baths | |
| Room Count | 6 3 2 | 6 4 3 | -3,000 | 7 4 3 | -3,000 | | |
| Gross Living Area | 1,449 sq. ft. | 1,571 sq. ft. | -6,000 | 1,628 sq. ft. | -9,000 | sq. ft. | |
| Basement & Finished | NONE NOTED | NONE NOTED | | NONE NOTED | | | |
| Rooms Below Grade | DOC # | ACTIVE LISTING | | PENDING SALE | | | |
| Functional Utility | GOOD | GOOD | | GOOD | | | |
| Heating/Cooling | FWA/CAC | FWA/CAC | | FWA/CAC | | | |
| Energy Efficient Items | NONE NOTED | NONE NOTED | | NONE NOTED | | | |
| Garage/Carport | 2 CAR ATT | 2 CAR ATT | | 2 CAR ATT | | | |
| Porch/Patio/Deck | PATIO | PATIO | | PATIO | | | |
| APN | | 268-302-02 | | 268-281-04 | | | |
| | POOL | NO POOL | = | NO POOL | = | | |
| | | REO | | | | | |
| Net Adjustment (Total) | | + X - | -49,000 | + X - | -54,000 | + - | $ |
| Adjusted Sale Price | | Net Adj. -13.25 % | | Net Adj. -14.03 % | | Net Adj. % | |
| of Comparables | | Gross Adj. 13.25 % $ 320,900 | | Gross Adj. 14.03 % $ 331,000 | | Gross Adj. % | $ |

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 09/12/1973 | 04/27/2009 | 11/05/1998 | |
| Price of Prior Sale/Transfer | 39,000 | NOT LISTED | 182,500 | |
| Data Source(s) | NDC MLS | NDC MLS | NDC MLS | |
| Effective Date of Data Source(s) | 11/03/2009 | 11/03/2009 | 11/03/2009 | |

Analysis of prior sale or transfer history of the subject property and comparable sales   SEE ADDENDUM

Summary of Sales Comparison Approach   SEE ADDENDUM

SALES COMPARISON APPROACH

| | |
|---|---|
| Borrower: SAINZ | |
| Property Address: 124 S ROYAL PL | County: ORANGE |
| City: ANAHEIM          State: CA | Zip Code: 92806 |
| Lender: GEROLD WOLFE, ESQ. | |

### Purpose of the Appraisal
The purpose of the appraisal is to determine an opinion of market value of the subject property in assisting the "Intended User" in making a lending decision in a mortgage transaction only and at the request of the client, as it pertains to the "Intended Use" of this appraisal. The acceptance of this assignment is not contingent upon a predetermined value or outcome in the final opinion of value for the subject property. Market value is defined in the Certification and Statement of Limiting Conditions attached to this report.

### Scope of the Appraisal
The scope of the appraisal includes the gathering of specific market data within an acceptable geographical radius and analysis thereof to assist in developing an opinion of value for the subject property. The assignment included a collection of sales data similar to the subject's size and design within the subject's direct market area. Information was obtained through such sources as Real Estate Brokers and Agents, public records, developers, Multiple Listing Service (MLS) and the client. The appraisers primary data sources were, Fares (RealQuest) and National Data Collective (NDC) which reports recorded sales from public records and MLS information as reported by the Local Board of Realtors. The comparables included in this report are considered to verified closed sales, field reviewed and were believed to the most relevant in the final estimate of value. The data used is considered reliable, however, accuracy is not guaranteed. When conflicting information was provided, the source deemed to be the most reliable was reported in the appraisal. Data considered to be unreliable was not used.

### Site Comments
The site is a level, interior lot. The on-site and off-site improvements are typical for the area. No adverse easements or encroachments were noted. The site reflects good overall maintenance levels. Highest and best use is its current use as a single family dwelling.

### Additional features (special energy efficient items, etc.):
The subject is a single story, average quality, wood frame, stucco dwelling in good condition. The subject has vinyl and carpet flooring. Reflected into the overall condition rating. The exterior has average landscape, pool, concrete patio and walk, wood fence.
### Condition of Improvements
The Effective Age is less than the actual age due to the maintenance and upkeep over the years. Typical Physical Depreciation is calculated through the Age Life Method in the Cost Approach. No functional or external obsolescence was noted. No deferred maintenance was noted.
### Adverse Environmental Conditions
No potential environmental hazards that could impact the site have been observed or are known to the appraiser. The estimated value is based on the assumption that the property is not negatively affected by the existence of hazardous substances or detrimental environmental conditions unless otherwise stated in this report. The appraiser is not a expert in the identification of hazardous substances or detrimental environmental conditions. The appraisers routine inspection of and inquiries about the subject property did not develop information that indicated any apparent environmental conditions on or around the subject property that would negatively affect its value.

### Comments on Sales Comparison
The subject is in good condition and the sales used reflect the most recent sales that are similar to the subject. GLA differences are adjusted @ $50.00 per Sq.Ft. based on paired sales analysis and MLS. Adjustments for differences in site size and pool were not warranted, due to no significant dollar amount could be abstracted from the market. These Comparable Sales are considered to be in the subjects market area and are deemed comparable. Active listings and pending sales are adjusted 10% to allow for buyer and seller negotiations.

Comps #1 - #5 are all similar in utility.
Comp #1 is used to bracket the upper end of bedroom count.
Comp #2 is used to bracket total room count.
Comp #3 is used to bracket the upper end of condition.
Comp #4 is an Active Listing used to bracket appeal.
Comp #5 is a Pending Sale used to bracket the condition.


More emphasis was placed on comparable sales #1 for being the most recent transfer. The comparable sales are considered the most recent, similar sales available at the time of the inspection.

### Analysis of Current Agreement
The preliminary title report was not reviewed or supplied.

### Market Conditions
The typical marketing time for a home that is priced right is 3-6 months with the typical exposure time for the subject property is generally from 3-6 months which is in line with the marketing times. There appears to be a over supply of listings within the general area. Supply appears to be overweighing demand in the current market. Conventional financing is typical to the market area. Decreasing property values reflected by higher inventories and higher marketing times for similar homes in the area.

SUBJECT PHOTOGRAPH ADDENDUM

DS110309

769-E4-1

| | |
|---|---|
| Borrower | SAINZ |
| Property Address | 124 S ROYAL PL |
| City  ANAHEIM | County  ORANGE    State  CA    Zip Code  92806 |
| Lender/Client | GEROLD WOLFE, ESQ. |



FRONT OF
SUBJECT PROPERTY



REAR OF
SUBJECT PROPERTY



STREET SCENE

GLENN HALPERIN APPRAISALS

INTERIOR PHOTOGRAPH ADDENDUM

DS110309

769-E4-1

| | | |
|---|---|---|
| Borrower | SAINZ | |
| Property Address | 124 S ROYAL PL | |
| City | ANAHEIM | County | ORANGE | State | CA | Zip Code | 92806 |
| Lender/Client | GEROLD WOLFE, ESQ. | |



BATHROOM



BATHROOM



KITCHEN

INTERIOR PHOTOGRAPH ADDENDUM

DS110309

769-E4-1

| Borrower | SAINZ | | | | | | | |
| Property Address | 124 S ROYAL PL | | | | | | | |
| City | ANAHEIM | County | ORANGE | State | CA | Zip Code | 92806 |
| Lender/Client | GEROLD WOLFE, ESQ. | | | | | | | |



LIVING ROOM



DINING ROOM



pool

GLENN HALPERIN APPRAISALS





Page 15 of 18
DS110309
File No:   769-E4-1

| Borrower | SAINZ | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 124 S ROYAL PL | | | | | | |
| City | ANAHEIM | County | ORANGE | State | CA | Zip Code | 92806 |
| Lender/Client | GEROLD WOLFE, ESQ. | | | | | | |

| SKETCH CALCULATIONS | Area |
|---|---|
| A1 | A1 : 42.5 x 26.0 = 1105.0<br>A2 : 30.0 x 9.0 = 270.0<br>A3 : 24.5 x 3.0 = 73.5<br><br>First Floor 1448.5 |
| A2<br>A3 | |
| | **Total Living Area** **1448.5** |
| A4 | A4 : 20.0 x 24.0 = 480.0<br><br>Detached Garage 480.0 |
| | **Total Garage Area** **480.0** |
| A5<br>A6 | A5 : 0.5 x 22.5x6.5 = 73.1<br>A6 : 22.5 x 10.0 = 225.0<br><br>Patio 298.1 |
| | **Total Patio/Deck Area** **298.1** |

Day One Forms for Windows - 1 800-GET-DAY1                SKETCH ADDENDUM  Page 2 of 2

COMPARABLES PHOTOGRAPH ADDENDUM

DS110309
769-E4-1

Page 16 of 18

| | |
|---|---|
| Borrower | SAINZ |
| Property Address | 124 S ROYAL PL |
| City | ANAHEIM    County    ORANGE    State    CA    Zip Code    92806 |
| Lender/Client | GEROLD WOLFE, ESQ. |



**COMPARABLE SALE # 1**
2821 E DUTCH AVE
ANAHEIM
Date of Sale :    09/14/2009
Sale Price    :    340,000
Sq. Ft.    :    1,691
$ / Sq. Ft.    :    201.06



**COMPARABLE SALE # 2**
223 S ALICE WAY
ANAHEIM
Date of Sale :    07/16/2009
Sale Price    :    330,000
Sq Ft    :    1,594
$ / Sq. Ft.    :    207.03



**COMPARABLE SALE # 3**
2703 E MARDI GRAS AVE
ANAHEIM
Date of Sale :    06/23/2009
Sale Price    :    350,500
Sq. Ft.    :    1,471
$ / Sq. Ft.    :    238.27

GLENN HALPERIN APPRAISALS

COMPARABLE PHOTOGRAPH ADDENDUM

DS110309
769-E4-1

| Borrower | SAINZ | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 124 S ROYAL PL | | | | | | |
| City | ANAHEIM | County | ORANGE | State | CA | Zip Code | 92806 |
| Lender/Client | GEROLD WOLFE, ESQ. | | | | | | |



**COMPARABLE SALE # 4**
518 N CHANTILLY ST
ANAHEIM
Date of Sale : 09/29/2009
Sale Price : 369,900
Sq. Ft. : 1,571
$ / Sq. Ft. : 235.46



**COMPARABLE SALE # 5**
217 N CHANTILLY ST
ANAHEIM
Date of Sale : 10/28/2009
Sale Price : 385,000
Sq. Ft. : 1,628
$ / Sq. Ft. : 236.49

**COMPARABLE SALE # 6**

Date of Sale :
Sale Price :
Sq. Ft. :
$ / Sq. Ft. :

GLENN HALPERIN APPRAISALS

LOCATION MAP ADDENDUM

| Borrower | SAINZ | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 124 S ROYAL PL | | | | | | |
| City | ANAHEIM | County | ORANGE | State | CA | Zip Code | 92806 |
| Lender/Client | GEROLD WOLFE, ESQ. | | | | | | |



COMPARABLE SALES INFORMATION

| COMPARABLE SALE #1 | | | | COMPARABLE SALE #6 | | | |
|---|---|---|---|---|---|---|---|
| Address: | 2821 E DUTCH AVE | | | Address: | | | |
| Date of Sale: | 09/14/2009 | Sale Price: | 340,000 | Date of Sale: | | Sale Price: | |
| Room Count - Total: | 8 | Bedrooms: 4 | Baths: 3 | Room Count - Total: | | Bedrooms: | Baths: |
| Gross Living Area: | 1,691 | | | Gross Living Area: | | | |
| Proximity to Subject: | 0.10 MI N | | | Proximity to Subject: | | | |
| COMPARABLE SALE #2 | | | | COMPARABLE SALE #7 | | | |
| Address: | 223 S ALICE WAY | | | Address: | | | |
| Date of Sale: | 07/16/2009 | Sale Price: | 330,000 | Date of Sale: | | Sale Price: | |
| Room Count - Total: | 6 | Bedrooms: 3 | Baths: 2 | Room Count - Total: | | Bedrooms: | Baths: |
| Gross Living Area: | 1,594 | | | Gross Living Area: | | | |
| Proximity to Subject: | 0.30 MI SE | | | Proximity to Subject: | | | |
| COMPARABLE SALE #3 | | | | COMPARABLE SALE #8 | | | |
| Address: | 2703 E MARDI GRAS AVE | | | Address: | | | |
| Date of Sale: | 06/23/2009 | Sale Price: | 350,500 | Date of Sale: | | Sale Price: | |
| Room Count - Total: | 6 | Bedrooms: 3 | Baths: 1 | Room Count - Total: | | Bedrooms: | Baths: |
| Gross Living Area: | 1,471 | | | Gross Living Area: | | | |
| Proximity to Subject: | 0.25 MI N | | | Proximity to Subject: | | | |
| COMPARABLE SALE #4 | | | | COMPARABLE SALE #9 | | | |
| Address: | 518 N CHANTILLY ST | | | Address: | | | |
| Date of Sale: | 09/29/2009 | Sale Price: | 369,900 | Date of Sale: | | Sale Price: | |
| Room Count - Total: | 6 | Bedrooms: 4 | Baths: 3 | Room Count - Total: | | Bedrooms: | Baths: |
| Gross Living Area: | 1,571 | | | Gross Living Area: | | | |
| Proximity to Subject: | 0.45 MI NW | | | Proximity to Subject: | | | |
| COMPARABLE SALE #5 | | | | | | | |
| Address: | 217 N CHANTILLY ST | | | | | | |
| Date of Sale: | 10/28/2009 | Sales Price: | 385,000 | | | | |
| Room Count - Total: | 7 | Bedrooms: 4 | Baths: 3 | | | | |
| Gross Living Area: | 1,628 | | | | | | |
| Proximity to Subject: | 0.20 MI W | | | | | | |

**DECLARATION OF GERALD WOLFE IN SUPPORT OF MOTION TO AVOID LIEN**

I, Gerald Wolfe, declare as follows:

1. I am counsel of record for DON K. SAINZ and DORIS M. SAINZ in this bankruptcy case, Case No. 8:09-BK-20502-ES;

2. The statements made herein are from facts within my personal knowledge, and, if called as a witness, I could and would testify competently thereto;

3. Attached as Exhibit "1" is a true and correct copy of Schedule A for the above referenced case and by this reference made a part hereof.  The value of the real property located at 124 Royal Place, Anaheim, CA 92806 (with the legal description N TR 6752 LOT 34 and Asessor's Parcel Number of APN  268-111-26) ("Property")  is valued at $335,000 therein.  An appraisal conducted by GLENN HALPERIN, a licensed real estate appraiser in the State of California value the Property at $325,000 on November 3, 2009  (See Exhibit "2");

4. Attached as Exhibit "3" is a true and correct copy of Amended Schedule D for the above referenced case and by this reference made a part hereof.  INDYMAC's claim is listed at $412,750 with CITIBANK claim listed at $110,272;

5.  Exhibit "4" attached to Don K Sainz's declaration is a true and correct copy of the Proof of Claim filed on behalf of ONEWEST BANK, FSB has filed a proof of claim on behalf of "DEUSTCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE OF THE INDYMAC INDX MORTGAGE LOAN TRUST 2006-AR23, MORTGAGE PASS-THROUGH CERTIC***"  with respect to the loan secured by the First Deed of Trust on the Property in the amount of $436, 500.05 on November 23, 2009;

6. Exhibit "7" attached to Don K. Sainz's declaration is a claim of $1002.60 for taxes for the fiscal year of 2008-2009 on the Property filed by the ORANGE COUNTY TREASURER-TAX COLLECTOR.

1

2   I declare under penalty of perjury under the laws of the State of California that the foregoing is

3   true and correct.

4

5   Executed this 23th day of November, 2009 at Aliso Viejo, California

6

7   __/s/ Gerald Wolfe_____

8   Gerald Wolfe, declarant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "1"

B6A (Official Form 6A) (12/07)

In re   **Don Keith Sainz,**                                    Case No.   **8:09-bk-20502**
        **Doris Mae Sainz**
_____
                         Debtors

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a
cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for
the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W,"
"J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under
"Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule.  List them in Schedule G - Executory Contracts and
Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity
claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or
if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **124 S. Royal Place**<br>**Anaheim, CA  92806** | **Fee simple** | **C** | **335,000.00** | **523,022.00** |

|  |  |  |
|---|---|---|
| Sub-Total > | **335,000.00** | (Total of this page) |
| Total > | **335,000.00** |  |

__0__   continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

EXHIBIT "3"

B6D (Official Form 6D) (12/07)

In re   **Don Keith Sainz,**
        **Doris Mae Sainz**

Case No.   **8:09-bk-20502**

Debtors

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS - AMENDED

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J C | | | | | | |
| Account No. **xxxxxx1939** | | | | | 2006 | | | | | |
| **Citibank** P.O. Box 894904 Los Angeles, CA 90189 | C | | | | **Deed of Trust- Second** **124 S. Royal Place** Anaheim, CA  92806 | | | X | | |
| | | | | | Value $          335,000.00 | | | | 110,272.00 | 110,272.00 |
| Account No. **xxxxxx9455** | | | | | 2006 | | | | | |
| **IndyMac** P.O. Box 78826 Phoenix, AZ 85062-8826 | C | | | | **Deed of Trust- First** **124 S. Royal Place** Anaheim, CA  92806 | | | X | | |
| | | | | | Value $          335,000.00 | | | | 412,750.00 | 77,750.00 |
| Account No. **xxxxx0994** | | | | | 2008-2009 | | | | | |
| **Orange County Treasurer Tax Collector** Attn:  Bankruptcy Unit PO Box 1438 Santa Ana, CA 92702 | C | | | | **Property Tax** **124 S. Royal Place** Anaheim, CA  92806 | | | X | | |
| | | | | | Value $          335,000.00 | | | | 1,003.00 | 1,003.00 |
| Account No. | | | | | | | | | | |
| | | | | | Value $ | | | | | |

| | | | |
|---|---|---|---|
| **0**   continuation sheets attached | | Subtotal (Total of this page) | 524,025.00 | 189,025.00 |
| | | Total (Report on Summary of Schedules) | 524,025.00 | 189,025.00 |

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037